The next case today is United States v. Ruben Gonzalez, appeal number 191461. Attorney Glazer, please introduce yourself on the record. Good morning, your honors. My name is Lenore Glazer. I have the honor to be here on behalf of Ruben Gonzalez, and my apologies that the technology has not caught up with me. Your honors, this case fits squarely within the precedent of this court in United States v. Camacho. In Camacho, the police officer pushed Camacho or rather felt his stomach and Camacho pushed back. And in this case, the touching is parallel except that instead of being with human hands, it is a car, police cruiser touching the bumper of the car of Mr. Gonzalez, who stopped and then attempted to retreat. In fact, in Camacho, it notes that even an unsuccessful attempt to flee would not alter the issue here. This court, the government, and of course, Mr. Gonzalez, all agreed that the moment that the cruiser of the police officer touched the bumper of Mr. Gonzalez in their planned blockade of his car, that that was a seizure. And the facts in this case, like in Camacho, would not have risen to the standard needed for a seizure. In this case, remembering that Mejia, who's the co-defendant, the police believed was a drug distributor. And the morning of this incident had returned to his home with a load of drugs that were- Counselor, excuse me. I'd like to ask you this question because I think it's important to your analysis. I found the district court judges a little confusing on one point, and that is, when did the officers obtain a search warrant for both the Shaw Street residence and Mr. Mejia's vehicle? At one point in the decision, the judge suggests that the officers before the blockade, as you describe it, they already had obtained those search warrants, but they chose for safety reasons not to execute them, but instead do what, again, you describe as the blockade. But at another point, the judge suggests that it's only after what happened at the scene that they then obtain the search warrant. Which is it? When were those search warrants obtained? Your Honor, my recollection is that the search warrants were requested while the- In a parallel time that the police were planning the details of this stop, the actual physical search warrants, in my recollection, arrived after the seizure and the arrest of my client. Notably, his car was not one of the cars that they had a search warrant for. It was the car, Mejia's car, and Mejia's home. I don't remember with precision where that is in the opinion. I'm happy to- Okay. But their attempt to secure a search warrant, I mean, they are asserting that there is probable cause to believe that evidence, that evidence of, in this case, illegal drug transaction will be found in the residence, correct? I mean, that's what they're asserting. That's correct, Your Honor. So then if they then see these two individuals emerging from that residence and going into the vehicle, why doesn't that indicate that they, and this is what they say, that they had certainly a reasonable suspicion that a drug transaction had taken place in the residence, that evidence of that transaction will now be found in the vehicle, which is about to leave. Why doesn't that, their suspicions, their belief about what would be found in the house, why doesn't that inform their judgment about what they would now find in the vehicle as it's about, reasonably inform their judgment about what would be found in that vehicle as it leaves the residence? Your Honor, I think the timing and the conclusion itself of the police that the drugs would have been in the other car, the car that, the Sienna, which had a hold, that would have been in the- More minutes remaining. Excuse me? Go ahead. My apologies. And that the actual stopping seizure of my client occurs about 13 minutes hours after the drugs allegedly arrived at the house. And in that time, they have seen Mr. Mejia leave. They've lost track of him. They saw what later appears to be Mr. Gonzalez, but they didn't know who he was at the time. Leave together from the mall. They lose sight of that. They don't know what happens to or from what happens in the house. There is very little known about Mr. Gonzalez at that point. They have heard an unknown male who seems to be interested in drugs. The same telephone call seems to be meeting up at Legacy Place, but there is just this vagary of whether Mejia brings the drugs, whether there's any transaction anywhere along the line by Mejia, whether the drugs remain in Seabrook, which is the argument, the conclusion that the police want to make. All of that suggests that factually, in terms of what they knew about Gonzalez, was very limited. Ms. Glazer, if I've understood, you're responding to Judge Lopez by saying, maybe they had reasonable suspicion about Mejia, but there wasn't enough evidence to connect Mejia and Gonzalez to provide reasonable suspicion. Later, you make the argument in your brief for either a Terry stop or for a seizure. Is that essentially it? It's essentially with one difference is that we do not conceive that there ever was a Terry stop. This is really a seizure. The district court concludes it's a seizure and the subsequent... Okay, now let's move on. Go ahead, Judge Barron. You also make an argument about arrest. Okay. You want to connect them? Yes. Thank you, Your Honor. The arrest is really sort of part of why this is not... There is no independent basis to arrest Mr. Gonzalez because of his attempt to flee by moving his car. Again, Camacho indicates that even an unsuccessful attempt to flee or to resist does not remove the taint. In addition, here in this case, Mr. Gonzalez was never arrested for anything involving the motor vehicle, never charged, never arrested. Can I just add one fact? When the car is bumped, who's in the car? In the car is Mr. Gonzalez and Mr. Mejia. Okay, so what's the significance of the Well, if the police had made a determination, they wanted to make an inquiry like a Terry stop, that might have survived scrutiny. But in this case, Mejia has been around for 13 hours. They have seen him and then lost him, seen him again and lost him. And there's nothing particular. Just last point. If there was probable cause to arrest Mejia, but not Gonzalez, and if the bumping of the car is an arrest, is the idea that it's clear and obvious that you can't arrest Mejia through means that would result in the detention of the car when Gonzalez is in it? I don't know, Your Honor, that there was sufficient grounds to arrest Mejia because I know I'm saying if there were Oh, if there were, then I think still as to Gonzalez, that the effort to arrest Mejia, which resulted immediately in a seizure and in a de facto arrest of Gonzalez, still would not be sufficient, right? So it wouldn't have been admissible. I think one other point I want to make is that the government argues that you don't need to address this issue because at trial, Mejia testified at Mr. Gonzalez's trial and said Mejia was involved in drugs with him. I would suggest that that argument shouldn't hold if, in fact, this court determined that the suppression motion should have been allowed and that information had not come in to the trial. The remaining evidence largely would have been Mejia's testimony and certainly the importance of the facts in this case clearly would have impacted on a jury's determination of Mejia's credibility. So for those reasons, Your Honor, I haven't addressed that issue nor do I think it's an actual issue because if the suppression motion is decided in favor of Mr. Gonzalez, then I think the trial testimony looks very different. Thank you. Thank you, Your Honors. Attorney Glaser, you should mute your camera at this time and your audio if you can. And Attorney Quinlivan, you should unmute your device. Reintroduce yourself on the record. You have a 10-minute argument. Good morning, Judge Lynch. You may please the court. Mark Quinlivan for the United States. If I could start just by clarifying in response to Judge Lopez's question, Special Agent Hayes testified that he obtained the search warrants approximately a half an hour before the defendant and Mr. Mejia were taken into custody, and you can find that testimony on page 44 of the appendix. The district court in this case did not deny the motion to suppress and let me go through all the steps as to why that's the case. We do agree as we set forth in our brief that the defendant was seized for purposes of the Fourth Amendment when SSA Connolly's car touched the bumper of the defendant's Toyota Sienna and it came to a stop. That said, I don't think this court ultimately needs to even reach that issue because given that the parties are in agreement, the court could assume without deciding this issue. And we did note in our brief that in Torres v. Madrid, the question of whether a fleeing motorist was shot but continues to flee, whether that's a seizure for purposes of the Fourth Amendment, given that that's pending in the Supreme Court, and again, given the party's agreement, this court can simply assume without deciding the issue as it did, for example, when the question of whether Johnson applied to the guidelines was raised. But we've explained in our brief why we think that this was a physical force as opposed to a show of authority seizure, and unlike show authority seizures, submission is not required for a physical force seizure. So the fact that the defendant fled may be relevant to other issues under the Fourth Amendment, but it doesn't negate that the seizure occurred. Turning to the question of reasonable suspicion, as both the magistrate judge and the district court found, there was ample reasonable suspicion in this case. And let me just summarize the key facts. The agents believed that Mejia was engaging in drug transactions with his brother in Sinaloa, Mexico. They had information that he purchased through a Chrysler Sebring and had a secret compartment installed in the Chrysler Sebring. GPS devices were placed on the Sebring. They thereafter intercepted multiple calls between Mr. Mejia and a number that turned out to be the defendant's, in which they discussed an upcoming drug transaction. During those conversations, at one point, the defendant said that he wanted as much product as you can provide. On the night and going into the morning of November 25th and 26th, 2013, the GPS devices showed that Mr. Mejia drove the Chrysler Sebring to New York, Northern New Jersey, and then back to 32 Shaw Street in West Roxbury, which the agents believed was being used as a stash house. Then during the day on November 26th, there were multiple intercepted conversations between Mr. Mejia and the defendant about meeting up to engage in what the agents suspected would be a drug transaction. They agreed to meet at the Legacy Place Mall and ultimately agreed to meet in two separate vehicles and then they would drive away in one vehicle. That's exactly what the agents and the officers observed. They observed Mr. Mejia arrive at the mall, meet with an individual, later identified as the defendant. They walked around the mall and then got into the defendant's Sienna and drove away. The agents lost track of the Sienna, went to 32 Shaw Street, where they observed. Mr. Quinlan-Evans, is the key to this narrative the step where you said the agents believed that they were meeting up to do a drug deal? In other words, if all we had was evidence that they were meeting up, that wouldn't be enough for probable cause with respect to Gonzalez, would it? In other words, if they just observed Mr. Gonzalez meeting at the mall... They heard him call and they said, I'll meet you at the mall. Yeah, I'll meet you at the mall. And then they see him at the mall and then that's all it was, but that had been enough to be probable cause. I think it might be enough for reasonable suspicion given that they... For probable cause. Probable cause. Oh, certainly not for probable cause. So that's something. So if we concluded that the blockade was an arrest and not a Terry stop, then it's critical that the interactions between Mejia and Gonzalez prior to them being in the car could be understood to have been interactions which were predicate to them doing a drug deal. Correct. Yes, I would agree. And I would point out, Judge Barron, that... Four minutes remaining. So working backwards. So the district court found that there was a seizure, but there wasn't an arrest until he got out of the car, he fled, he resisted arrest, and they put handcuffs on him. So what is the government's position on why the conclusion of the district court as to when the arrest took place, which would require probable cause? What's the position on why that's the way one should view this rather than arrest occurs at the point of seizure? I have two answers, Judge Lynch. First, as we noted in our brief, the defendant never argued below that the initial... When the vehicles met, that that constituted a de facto arrest. So in our view, it's on plain error review. And in fact, I think that argument fails under any level of review. This court, as we noted in our brief, is repeatedly saying that blocking a vehicle when officers draw their weapons, that alone doesn't alter or change a investigatory stop or a seizure into a de facto arrest. And indeed, the factors that this court considers in whether there's a de facto arrest all point in the direction that it wasn't. This court considers whether there were familiar... All right. So if the arrest is not at the time of the seizure, but it's later, there is more evidence. What is the evidence to support probable cause that is, in addition to the evidence that would have justified the seizure of the vehicle? Well, the additional evidence, Judge Lynch, is that after the Sienna was momentarily stopped, the defendant reversed course and sped backwards, eventually crashing into two cars. The agents then... Well, after S. S. A. Connolly believed that the defendant was taking an action consistent for reaching for a gun, he fired four shots at the Sienna. They were able to but the defendant struggled violently when they tried to remove him from the vehicle. Eventually, I think with the testimony was four agents had to subdue him. And at that point, they clearly had grounds to arrest him for resisting arrest under Massachusetts law or possibly even assault and battery on a police officer. Can I just add something? If I'm the candor in the brief about how you see the seizure issue, but in addressing the question of the level of suspicion of probable cause that the government had, I just go back to that thing. It turns a lot on how they interpreted the interaction between Mejia and Gonzalez prior to the bumping of the car. And I guess if the interactions could be interpreted as predicate to a drug deal, then it just seems a little hard to me to see how it could be enough for reasonable suspicion, but not for probable cause. It seems a little bit on off. In other words, if you thought observing them, they were about to do a drug deal, given what you had evidence about Mejia, then it would seem like you had probable cause. If it's not enough to think they were doing a predicate drug deal, then you start to wonder why there would even be reasonable suspicion. In other words, unless the idea is anybody that got in the car with Mejia that day, you'd have reasonable suspicion. That seems a little bit questionable to me. Well, I don't think it at all undercuts reasonable suspicion. Judge Barron, I think the key point is that when they intercepted the calls on November 26, the actions that Mr. Mejia and the defendant took were entirely consistent. Yeah, no, no. What I'm saying is that being so, it just seems like the case for probable cause is going to be pretty strong then. Whereas if their actions were not consistent, if we concluded from the record you couldn't interpret those actions as showing them predicate for a drug deal, then you've just got somebody got in the car with Mejia. I'd be a little hesitant to say that anybody who gets in the car with Mejia that day, you have reasonable suspicion that they're doing. Do you see what I'm saying? I do, I guess. That doesn't hurt your position, it may just make it easier for us. Our only point is that I don't think the court need, because this wasn't a de facto arrest, I don't think the court needs to decide whether there was probable cause at that time. It only needs to decide whether there was reasonable suspicion. Well, I guess one thing is, yeah, the only thing about it, we'd have to decide, we have to reject his arrest argument. Yes, absolutely, and as I said, I think that fails. The other way we can assume the arrest and then say that there's probable cause, so it's either way, there's various, yeah. Yes, let me just briefly mention why this case is fundamentally different from Camacho, which my friend has relied heavily on. The first point is, in Camacho, the district court found that reasonable suspicion didn't even exist for the stop. In that case, basically, there was a report of a gang fight, a sergeant told two officers, he saw two people walking down the street, told them to stop them. The district court found there was not reasonable suspicion, but the unlawful seizure was negated by the break chain. In this case, there was ample reasonable suspicion, and secondarily, as we noted in our brief, in Camacho, the action taken by the officer, he saw what he thought was a bulge in the defendant's waist, reached out to tap it, and in fact did tap it. The defendant knocked away his arm and then ran away, and the distinction this court drew in that case was that the gun was totally different from this case, in which the drugs were found after the intervening actions taken by the defendant. So for both of those reasons, Camacho is distinguishable from this case. Mr. Quinlan, very quickly, you referred to the intercepted calls involving Mr. Gonzalez. Was there anything learned from those calls that sort of would inform the judgments about what was going on when this individual who later becomes Mr. Gonzalez arrives on the scene? Was there conduct that he was engaged in with Mejia that those calls somehow anticipated? What was there about those calls that might have identified Mr. Gonzalez in a way that might inform a judgment that he was in fact participating in the drug transaction? Judge Lopez, what happened in those calls was they agreed that they'd engaged in the transaction. They agreed to meet at the Legacy Place Mall in Dedham. I think initially, the idea was that they'd do the transaction at the Legacy Place Mall, but then they agreed that they'd meet in two separate cars, leave in one car, and then after engaging in the transaction, go back to the Legacy Place Mall where the defendant would drop Mr. Mejia off. The actions that the agents subsequently observed is entirely consistent with that. They observed Mr. Mejia arrive at the mall. They had never heard or seen specifically Mr. Gonzalez before, but then they see Mr. Mejia meet with Mr. Gonzalez, the defendant. They then walk around the mall engaging in what members of Special Agent Hayes' team believed was counter-surveillance. They get back in the Toyota Sienna and leave. Ultimately, they arrive at 32 Shaw Street, go inside for approximately half an hour, and then return to the Toyota Sienna and drive off. The agents reasonably believe that after engaging in the drug transaction inside the stash house, Mr. Gonzalez was driving Mr. Mejia back to the Legacy Place Mall where Mr. Mejia's car was parked. All right. All right. Thank you. Thank you. Thank you. Thank you. Thank you, Council. Attorney Quinlivan and Attorney Glazer may disconnect from the meeting at this time.